Filed 4/27/23  In re D.R. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re D.R, a Person Coming Under the Juvenile Court Law. | B319546 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>C.R.,<br><br>    Defendant and Appellant. | Los Angeles County Super. Ct. No. 22CCJP00394A |

APPEAL from orders of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge. Affirmed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

C.R. (father) appeals from jurisdictional findings and a removal order imposed by the juvenile dependency court with respect to his seven-year-old daughter (the minor.) The court found, under Welfare and Institutions Code[1] section 300, subdivision (b), that the minor was at risk of serious physical harm due to domestic violence between father and his girlfriend in which father was the aggressor. Because substantial evidence supports the court's conclusion that father has committed aggressive acts against his current girlfriend on multiple occasions and had repeatedly committed similar acts against the minor's mother during the course of their relationship, we see no error in the court's adjudication or disposition orders. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mother and father have one child together, the minor. At the time of the proceedings below, the parents no longer lived together and did not have a family law custody order. The minor lived with mother and visited with father regularly.

The Department of Children and Family Services (Department) received a referral regarding the minor on December 20, 2021, the same date a confrontation between father and mother occurred. The parents provided dramatically different accounts of the event. Mother said that father asked her to meet him at a local park. When she arrived, father approached her car and began knocking on her window. As mother exited her

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

car, father punched her in the face and then told his girlfriend Marisol to "get her." The women then engaged in a fistfight, with father cheering Marisol on, urging her to kick mother and hit her harder. According to father, however, he and Marisol were hanging out at the park when mother arrived "ready to fight." Father recalled that mother and Marisol fought each other and that mother was the aggressor but he denied all physical involvement in the fight. He stated that "mother was getting in his face and trying to fight him too, but he put his hand in the air and stated he was not going to hit her." Marisol also described mother as the aggressor and denied that father was involved in the fight. Mother requested and obtained a temporary protective order against father.

The Department filed a petition under section 300, subdivisions (a) and (b), alleging dependency jurisdiction on the basis of past domestic violence between father and mother, recent domestic violence between father and Marisol, marijuana abuse by father, and an endangering home environment due to unsecured firearms possessed by father.

On February 3, 2022, the court found father to be the presumed father of the minor, detained the minor from father, and released the minor to mother's custody under the Department's supervision. The court ordered monitored visitation for father twice weekly for two hours with discretion to liberalize.

The Department conducted an investigation. Mother reported that her relationship with father had ended in 2018 after a domestic violence incident. Their relationship had become "on and off, as time went on, due to verbal and physical altercations, primarily due to jealously by [father.]" She described her current relationship with father as "complicated." After the

4

break-up, father continually harassed mother about her work and personal life. She described "countless arguments" and aggressive behavior on father's part. For example, father would often speak ill of mother to the minor which caused the minor to "hate her at times" and "blame[ ] her for not allowing [the minor] to visit father." On one occasion, father did not like the shirt the minor was wearing. He called mother to complain and then ripped up the shirt. Father repeatedly refused to cooperate with mother regarding parenting decisions and would not keep to a regular custody schedule. Mother also recalled an occasion on which she was speaking with father over Facebook. He was harassing her and ultimately threatened her with guns, which he pointed at her through the camera.[2] Due to father's aggressive behavior and argumentative demeanor, mother often asked the paternal grandmother to monitor father's visits with the minor and assist with custody exchanges.

The Department also interviewed the minor, who was then six years old. She told the social worker that she often heard mother and father "fighting with words." She said that she felt safe in father's care and that he never punished her or hit her. But during two separate interviews, the minor reported hearing[3] father choke Marisol and the minor used a hand gesture to indicate hands around her neck. The minor said she heard father and Marisol fighting with words, then could not hear Marisol speak or breathe but heard her coughing. According to mother,

---

[2] Mother attached a screen shot of this event to her application for a restraining order.

[3] The minor initially said she saw father choking Marisol but later said she only heard it, as she was in the bathroom.

Marisol had previously disclosed that father had been physically abusive toward her. The paternal grandmother had also expressed concern over father's abusive treatment of Marisol.

Both the maternal grandmother and an adult maternal cousin told the Department social worker that father had a history of domestic violence in his relationship with mother and that the minor had said to them that father had hit Marisol. They also reported that father had gone to mother's house on multiple occasions and arrived "verbally aggressive and yelling." For his part, father denied all domestic violence with both mother and Marisol. He characterized mother as the aggressor in their relationship and also said he was "shocked" by the minor's report of domestic violence with Marisol. Marisol denied any domestic violence by father.

On March 15, 2022, the court held an adjudication and disposition hearing. After admitting the Department's reports and hearing arguments of counsel, the court sustained two jurisdictional allegations under section 300, subdivision (b). Count b-2 alleged: "[Father and Marisol] engaged in a violent physical altercation in the presence of the child. On a prior occasion, the father choked [Marisol] in the presence of the child. Such violent conduct on the part of the father towards [Marisol] endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, and danger." Count b-4 alleged: "[Father] created a detrimental and endangering home environment for the child in that an unsecured firearm is kept in the child's home, within access of the child. Such a detrimental and endangering home environment established for the child by the father, endangers the child's physical health and safety, creates a detrimental home

environment, and places the child at risk of serious physical harm, damage, and danger." With respect to count b-2, the court noted the conflicting evidence and specifically found the minor's account of the choking incident between father and Marisol to be credible and persuasive.

As to disposition, the court removed the minor from father, placed her with mother, and ordered monitored visitation for father for a minimum of two hours twice a week with discretion to liberalize. In addition, the court ordered father to participate in a domestic violence course, random on-demand drug testing, a parenting course, and individual counseling. The court further ordered no contact between the minor and Marisol.

Father appeals.

## DISCUSSION

Father contends the court's jurisdictional findings and disposition orders are unsupported by substantial evidence. We disagree.

### 1. Standard of Review

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. … "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court

7

must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence … such that a reasonable trier of fact could find [that the order is appropriate]." ' " ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Substantial evidence is " 'evidence which is reasonable, credible, and of solid value[.]' " (*In re I.C.* (2018) 4 Cal.5th 869, 892.)

Finally, and with respect to the court's removal order, which requires proof of substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor by clear and convincing evidence (§ 361, subd. (c)), we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

## 2. Substantial evidence supports the court's jurisdictional finding under section 300, subdivision (b), based on domestic violence.

Father contends that neither of the jurisdictional findings under section 300 is supported by substantial evidence. We conclude the court's finding of dependency jurisdiction under section 300, subdivision (b), based on domestic violence is supported by substantial evidence.[4]

---

[4] Because we affirm the jurisdiction finding and removal order on the basis of domestic violence, we do not address father's challenge to the alternative basis for jurisdiction. (See, e.g., *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492, overruled in part in *In re D.P.* (2023) 14 Cal.5th 266 [noting that "an appellate court may decline to address the

### 2.1. Legal Principles

Under section 300, subdivision (b), a juvenile court may exercise dependency jurisdiction if the " 'child has suffered, or *there is a substantial risk that the child will suffer*, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child … .' " (See *In re E.E.* (2020) 49 Cal.App.5th 195, 205.) "Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation]. The court may consider past events in deciding whether a child presently needs the court's protection. [Citation.] A parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

Domestic violence is a valid basis for the assertion of dependency jurisdiction over a child. "Domestic violence is always a serious concern, and any propensity to it is certainly highly relevant as regards children's welfare." (*Guardianship of Simpson* (1998) 67 Cal.App.4th 914, 938.) Where, as here, a child has not suffered serious physical harm or illness as a result of domestic violence, the jurisdictional allegation must be supported by evidence that the violence is ongoing, and the child is at substantial risk of such harm at the time of the jurisdiction finding. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717,

---

evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].)

disapproved on an unrelated point in *In re D.P., supra*, 14 Cal.5th at p. 278; *In re Heather A.* (1996) 52 Cal.App.4th 183, 194–195.)

Our courts have all too frequently explained the relationship between section 300, subdivision (b), and domestic violence: " '[D]omestic violence in the same household where children are living … is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.' [Citation.] Children can be 'put in a position of physical danger from [spousal] violence' because, 'for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg … .' [Citation.] [¶] 'Both common sense and expert opinion indicate spousal abuse is detrimental to children.' (*In re Benjamin D.* (1991) 227 Cal.App.3d 1464, 1470, fn. 5; see *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562; Fields, *The Impact of Spouse Abuse on Children and Its Relevance in Custody and Visitation Decisions in New York State* (1994) 3 Cornell J.L. & Pub. Pol'y 221, 228 ['Studies show that violence by one parent against another harms children even if they do not witness it.']; Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions* (1991) 44 Vand. L.Rev. 1041, 1055–1056 ['First, children of these relationships appear more likely to experience physical harm from both parents than children of relationships without woman abuse. Second, even if they are not physically harmed, children suffer enormously from simply witnessing the violence between their parents. … [¶] Third, children of abusive fathers are likely to be physically abused themselves.' (Fns. omitted.)].)" (*In re E.B.* (2010) 184 Cal.App.4th 568, 576, disapproved on an unrelated point in *Conservatorship of O.B., supra,* 9 Cal.5th at p. 1010, fn. 7.)

Finally, our courts have frequently observed that " '[p]ast violent behavior in a relationship is "the best predictor of future violence." Studies demonstrate that once violence occurs in a relationship, the use of force will reoccur in 63% of those relationships. … Even if a batterer moves on to another relationship, he will continue to use physical force as a means of controlling his new partner.' (Comment, *Beating Again and Again and Again: Why Washington Needs a New Rule of Evidence Admitting Prior Acts of Domestic Violence* (2000) 75 Wash. L.Rev. 973, 977–978, fns. omitted.)" (*In re E.B., supra,* 184 Cal.App.4th at p.  576; *In re R.C.* (2012) 210 Cal.App.4th 930, 941–942.)

### 2.2.   Analysis

Father contends no substantial evidence supports the court's jurisdictional finding based on domestic violence. We disagree.

As noted, the minor was not injured during the incident between father and Marisol described by the minor. Accordingly, to support jurisdiction under section 300, subdivision (b), the court had to find that the minor was at substantial risk of serious physical harm. Substantial evidence supports that finding. First, the minor heard father choking Marisol. Although she was not in the immediate area at that time, she was nearby and could be in harm's way in the future. Father responds that the minor's account was internally inconsistent and lacking in sufficient detail to establish that the choking incident she described had actually occurred. But the court explicitly found the minor's account to be credible. In keeping with the substantial evidence standard of review, we consider whether there is any substantial evidence, contradicted or uncontradicted, to support the court's decision. (See, e.g., *In re R.T.* (2017) 3 Cal.5th 622, 633.) Standing

11

alone, the minor's credible statements to social workers on two different occasions constitutes substantial evidence. We note that the minor also contemporaneously reported the incident to two other adults, the paternal grandmother and a paternal adult cousin.

Second, the choking incident was not, as father insists, a "singular incident of bad judgment." Instead, it was part of a long-standing pattern of domestic violence in father's relationships which, as we have said, may be a harbinger of future violence in the home. Marisol disclosed to mother early in her relationship with father that father was physically abusive, and father's family members expressed concern over his treatment of her. Further, mother reported that father was physically abusive during their relationship and their relationship ended due to ongoing instances of domestic violence. Father's ongoing emotional volatility, while falling short of physical abuse, is also well documented. Father's use of firearms to threaten mother during a Facebook call and the incident at the park that gave rise to the present proceeding are but two of the numerous examples contained in the record before us.

Third, father has repeatedly denied that he has physically abused either mother or Marisol, despite substantial evidence to the contrary. And to the extent he appears to concede that some evidence might exist concerning the choking incident described by the minor, he minimizes the seriousness of that incident by suggesting it was the product of "bad judgment." This is cause for concern because "[o]ne cannot correct a problem one fails to acknowledge." (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.)

In sum, substantial evidence supports the court's conclusion that the minor is at a substantial risk of harm in

father's custody due to the existence of domestic violence in the home.

### 3.	Substantial evidence supports the removal order.

Father also argues the court's disposition order suffers from several errors.

As an initial matter, father asserts that the court did not issue a removal order because, at the conclusion of the hearing, the court announced its ruling and stated, "The parents and guardians shall retain physical custody of the child who is placed under the supervision of the Department of Children and Family Services." He suggests that the court's use of the plural ("parents") rather than the singular ("parent") at the hearing indicates that the court did not intend to remove the minor from his custody, notwithstanding the written minute order to the contrary.

Father correctly notes that in most cases a conflict between a written order and a reporter's transcript should be resolved in favor of the transcript. (See *People v. Smith* (1983) 33 Cal.3d 596, 599; *In re Merrick V.* (2004) 122 Cal.App.4th 235, 249 [citing cases].) The rule is not absolute, however. (See *People v. Smith,* at p. 599 [rejecting rigid approach and noting that " 'whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case' "].) We have reviewed the reporter's transcript, father's case plan, and the clerk's minute order, and conclude the court intended to remove the minor from father's custody. This result is consistent with the court's order, made at the same hearing, that father should receive monitored visitation with the minor twice a week—an order that would be unnecessary if not for the removal of the minor from his custody.

13

As to father's contention that the removal order is not supported by substantial evidence, we disagree. Removing a child from a parent's custody is a matter of last resort. Accordingly, section 361, subdivision (c), limits " 'the court's authority to restrict a parent's rights following the exercise of dependency jurisdiction.' " (*In re S.R.* (2020) 48 Cal.App.5th 204, 218–219.) The provision states in pertinent part: "A dependent child shall not be taken from the physical custody of his or her parents … with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances[:] … [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor [was] returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody. …" (§ 361, subd. (c)(1).) As noted, we "must determine whether the record, viewed as a whole, contains substantial evidence from which a reasonable trier of fact could have made the finding of high probability demanded by this standard of proof." (*Conservatorship of O.B., supra,* 9 Cal.5th at p. 1005.)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor[s] and (2) potential detriment to the minor[s] if [they] remain[ ] with the parent. [Citation.] The parent need not be dangerous and the minor need not have been harmed before removal is appropriate. The focus of the statute is on averting harm to the child." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) The juvenile court may consider the parent's past conduct as well as the present

14

circumstances. (See, e.g., *In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

As discussed *ante*, domestic violence in the home places a child in danger of serious physical harm. Here, as discussed at length in the prior sections, father was the aggressor in a choking incident with Marisol when the minor was within earshot. He was also the aggressor in the altercation with mother that led the Department to become involved with this family. These recent incidents are part of a larger pattern of father's physical violence against his domestic partners and have been accompanied by other forms of aggressive and volatile behavior. On this point, father simply reasserts the arguments made as to the jurisdictional findings. They fare no better with respect to the removal order, taking into account the increased burden of proof on the Department. (*Conservatorship of O.B., supra*, 9 Cal.5th p. 1005.)

## DISPOSITION

The adjudication and disposition orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.